## Ex Parte Emmett Landry.

### No. 1220. Decided February 28, 1912.

**1.—Contempt—Witness—Constructive Criminal Contempt.**

It may now be said to be the settled law that the rules of evidence applicable to proceedings to punish for contempt are those of the criminal law, and proof of the alleged offense is required beyond a reasonable doubt. Harper and Prendergast, Judges, not concurring.

**2.—Same—Burden of Proof—Reasonable Doubt.**

In criminal contempt proceedings, the prosecution is required to assume the burden of proof, and to overcome the presumption of innocence to the exclusion of a reasonable doubt. Harper and Prendergast, Judges, not concurring.

**3.—Same—Affidavit—Pleading—Prima Facie Case.**

In criminal contempt proceedings, it is a prerequisite that an affidavit charging the essential elements of such contempt shall be made the basis for the prosecution and trial of the case, and such an affidavit must state a prima facie case of contempt; this is especially necessary when the alleged contempt was committed out of the presence of the court.

**4.—Same—Due Process of Law—Order of Court—Case Stated.**

Where the alleged constructive contempt was that the relator had attempted to procure a State's witness in a criminal cause then pending, to evade the process of the court, and there was no affidavit upon which the proceeding of contempt was predicated, showing that process was issued for said witness, and that relator had knowledge thereof, etc., but the proceeding was based upon an order of court commanding the issuing of notice to relator to show why he was not guilty of contempt, and did not set out the essential facts and elements of the alleged contempt, the same was not due process of law, and could not serve as the proper basis of the contempt proceeding.

From Harris County.

Original habeas corpus proceeding, asking release from custody under commitment of contempt proceeding, fining defendant for constructive contempt for interfering with a witness in a case then pending; penalty, a fine of $100 and three days confinement in the county jail.

The opinion states the case.

*Marsene Johnson* and *K. C. Barkley* and *Elmo Johnson* and *Roy Johnson,* for relator.—On the question of constructive contempt: Ex parte Lake, 37 Texas Crim. Rep., 656, and authorities cited in opinion.

*C. E. Lane,* Assistant Attorney-General, and *Richard G. Maury,* District Attorney, for the State.—On question of inherent power of District Courts to enforce their orders, etc.: Ex parte Degener, 30 Texas Crim. App., 566; Ex parte Tinsley, 37 Texas Crim. Rep., 517; Sparks v. State, 42 Texas Crim. Rep., 374.

Upon question of attempting to pursuade, force or bribe a witness under process from obeying the orders of the court constituting contempt: French v. Com., 97 S. W. Rep., 427; McConnal v. State, 46 Ind., 298; Hale v. State, 55 Ohio, 210; Scott v. State, 71 S. W. Rep., 824; McCarty v. State, 15 S. W. Rep., 736; White v. White, 62 Atl., 430; Emery v. State, 111 N. W. Rep., 374; 2 Bishop Crim. Law, 259; Thatcher's Criminal Cases, 146.

DAVIDSON, PRESIDING JUDGE.—During the trial of Sam Webber in the Criminal District Court of Harris County, under a charge of cattle theft, C. E. Chriss was the State's witness and among other things, testified that this applicant had asked him if he would take $500 and

leave the county; further stating that if Chriss would accept that amount and leave the county, he, applicant, would pay the witness' way to Beaumont and give him such reference that he could get employment upon his arrival at that point. This conversation, Chriss testified, happened between himself and applicant with no one else present. Applicant testified denying that he had "by act, word or sign, or gesture, at any time, made Chriss any proposition to leave the county." He also denied having intimated to him that he desired him to leave the county and never offered him any sum of money for that purpose or any other inducement. He stated that he had a conversation with Chriss about the Webber case "at the instance of old man Webber, father of Sam Webber, who was tried for cattle theft, to ascertain why Chriss was against his son Sam, and wanted to turn him up." At another time at the request of one of Sam Webber's attorneys he requested Chriss to call at the office of said attorney. This occurred shortly before the trial of Sam Webber. Chriss did not call, though he consented so to do. During their conversation applicant informed Chriss that "Webber wanted to make friends with him." Chriss promised to see Webber's counsel at 3 o'clock p. m., but did not do so. Chriss further stated to applicant in the conversation that "there is nothing I can do for Webber but this, he said he is worth six hundred dollars, he never said five hundred dollars at all, to convict Webber, and if I go up there he is bound to be convicted and if Webber will give me six hundred dollars I will be willing to get out of the way." He also said something about going to Arkansas where he had a friend. He further stated to applicant that he had been out money already on the case and was afraid he was going to be arrested. Chriss' evidence constituted him a principal in the cattle theft with Webber and he testified by turning State's evidence against Webber. The testimony of applicant was corroborated by other witnesses in regard to Chriss' expectation of receiving six hundred dollars from the Cattlemen's Association for his services in the Webber case. Chriss denied making any statement to the effect that the Cattlemen's Association was going to pay him six hundred dollars, as testified by other witnesses. This much has been stated to show that it was an issue between appellant and Chriss as to what occurred between them in regard to the alleged offered bribe to induce Chriss to leave the county. The evidence of Chriss on the Webber trial, therefore, could be only for the purpose of impeaching applicant as a witness if applicant testified in the trial of the Webber case.

It will be observed from this statement that under the testimony of Chriss this would be both a constructive and a criminal contempt. A criminal contempt is directed against the dignity of the court and as well against the majesty and dignity of the law. 4 vol., Ency. Pl. & Pr., pp. 766-768; Ex parte Robertson, 27 Texas Crim. App., 628; Gompers v. Buck Stove & Range Co., 221 U. S., at p. 418, 55 L. Ed., p. 808. It is further laid down and may now be said to be the settled

law that the rules of evidence applicable to the proceedings to punish for contempt are also those of criminal law, mere preponderance of the evidence being insufficient to convict the accused, but in accordance with the general rule in criminal cases, proof of the alleged offense is required beyond a reasonable doubt. Vol. 4, Ency. Pl. & Pr., p. 768 to 769; In re Buckley, 69 Cal., 1; Benbow v. Kellom, 52 Minn., 433; Holl v. Young, 47 N. H. Eq., 61; Maginnis v. Parkhurst, 5 N. J. Eq., 433; State y. Roborg, 134; Bettis case, 55 N. H., 325; Probosco v. Probosco, 30 N. J., 5, N. J. L., 628; Jackson v. Virgil, 3 John. (N. Y.), 138; Gage v. Denbow, 49 Hun. (N. Y.), 42; Ross v. Butler, 57 Hun. (N. Y.), 110; Sutton v. Davis, 6 Hun. (N. Y.), 237, 64 N. Y., 643; Harwell v. State, 10 Lea (Tenn.), 544; State v. Cunningham, 33 W. Va., 607; State v. Ralphsnyder, 34 W. Va., 342; In re Judson, 3 Blachf. (U. S.), 148, 53 Fed. Rep., 793, 63 Fed. Rep., 961; 1 Hughes U. S., 59. It is also now the settled rule that every presumption and intendment of innocence is to be held favorable to the party·charged with contempt. Weeks v. Smith, 3 Abb. Cr. (N. Y. Sup. Ct.), 211; Potter v. Law, 16 How. Pr. (N. Y. Sup. Ct.), 549; Slater v. Merritt, 75 N. Y., 268; Whipple v. Hutchinson, 4 Blatchf. (U. S.), 190; Woodruff v. North Bloomfield Gravel Mining Co., 45 Fed. Rep., 129, 53 Fed. Rep.; 793. In Gompers v. Buck Stove & Range Co., 221 U. S., 418 (55 Law. Ed., 797), it was said: "If then, as the Court of Appeals.correctly held, the sentence was wholly punitive, it could have been properly imposed only in a proceeding instituted and tried as for criminal contempt. The question as to the character of such proceedings, has generally been raised in the Appellate Court to determine whether the case could be reviewed by writ of error or on appeal. Bessette v. W. B. Conkey Co., 194 U. S., 324, 48 L. Ed., 997, 24 Supt. Ct. Rep., 665. But it may involve much more than mere matters of practice. For, notwithstanding the many elements of similarity in procedure and in punishment, there are some differences between the two classes of proceedings, which involves substantial rights and constitutional privileges. Without deciding what may be the rule in civil contempts, it is certain that in proceedings for criminal contempts the defendant is presumed to be innocent. He must be proved to be guilty beyond a reasonable doubt .and can not be compelled to' testify against himself. Boyd v. U. S., 116 U. S., 616, 29 L. Ed., 746, 6 Sup. Ct. Rep., 524; U. S. v. Joseph, 63 Fed., 951; State v. Davis, 50 W. Va., 100; 40 S. E., 331; 14 Am. Crim. Rep., 282; King v. Ohio & M. R. R. Co., 7 Biss., 529; Fed. Cases No. 7800; Sabin v. Fogarty, 70 Fed., 482; Drakeford v. Adams, 98 Ga., 724, 25 S. E., 833." The authorities cited would seem all sufficient to leave it clear that in a criminal action or criminal contempt the State or the prosecution is required to assume the burden of proof to overcome the presumption of innocence to the exclusion of the reasonable doubt. In this case the State was demanding punitive punishment and the judgment shows that the penalty inflicted was three days confinement in jail and, a fine of $100.

2.   It is urged that it is a prerequisite in criminal contempts that an affidavit charging the essential elements of such contempt shall be made as a basis for the prosecution and trial of the case.   If applicant is correct in this proposition, that is that an affidavit is necessary, then it is unquestionably correct that such affidavit should and must state a prima facie case of contempt.   4 vol., Ency. Pl. & Pr., 780; Ex parte Ah Min, 77 Cal., 198; Ex parte Fong Yen Yon, 19 Pac. Rep., 500; Whitten v. State, 36 Ind., 196; McConnell v. State, 46 Ind., 298; Wooland v. State, 82 Ind., 49; State v. Myers, 44 Iowa, 580; In re Cheeseman, 49 N. J. L., 115; People v. Ct. of Sessions (Sup. Ct.), 31 N. C., 373; People v. Wilson, 5 Johns. (N. Y.), 368; State v. Mitchell, 3 S. Dak., 223; Young v. Canon, 2 Utah, 560.   These cases lay down the correct rule in regard to pleading and the essential elements which must form a basis for the prosecution of criminal contempt, and that rule is that the affidavit must set forth a prima facie case.   Among other things, it must state and show knowledge on the part of the contemnor that he had committed contempt and wherein he had done so.   It must charge him of knowledge, among other things, of the violated process or order of the court where that is the basis of contempt.   People v. District Court, 19 Col., 343; Wyatt v. People, 17 Col., 252; Hedges v. Supt. Ct., 67 Cal., 405; Ex parte Willand, 20 Eng. L. & Eq., 293, 9 Cyc., p. 38, and cases cited in note 2.   Recurring now to what is necessary pleading as a basis for instituting contempt, it may be thus stated:   "The almost universal method by which contempt proceedings is begun is by an affidavit, and an examination of the authorities will generally disclose that in all contempt proceedings, save such as are committed in the court's immediate presence, an affidavit is necessary." 4 vol., Ency. Pl. & Pr., 779; Batchilder v. Moore, 42 Cal., 412; Hughes v. People, 5 Col., 436; Thomas v. People, 14 Col., 254; Wyatt v. People, 17 Col., 252; Whitten v. State, 36 Ind., 196; State v. Vincent, 46 Kan., 618; Murcock's case, 2 Bland (Md.), 461; In re Wood, 82 Mich., 75; Phillips v. Welsh, 12 Nev., 158; People v. Brown, 4 Paige (N. Y.), 405; People v. Murphy, 1 Daly (N. Y.), 462; Baker v. Williams, 12 Barb. (N. Y.), 527; State v. Kaiser, 20 Ore., 50; State v. Blackwell, 10 S. C., 35; Young v. Cannon, 2 Utah, 560; Wilson v. Ter., 1 Wyo., 155.

In 9 Cyc., p. 38, the rule is thus stated:   "As a rule the proceedings to punish for contempt committed out of the presence of the court should be instituted by a statement, or some writing, or affidavit presented to the court setting forth the facts constituting the contempt." Ex parte Rickert, 126 Cal., 244; Batchelder v. Moore, 42 Cal., 412; Chaplin v. People, 57 Ill. App., 577.   For a great number of cases, too numerous here to collate, see 9 Cyc., p. 38 and note for collation of said cases.   While a "statement or affidavit made on information and belief have been upheld in a few cases, the better practice, the sounder rule and the great weight of authority require the material allegations to be made of personal knowledge."   9 Cyc., p. 39; In re Wood, 82

Mich., 75; Herdman v. State, 54 Neb., 626; Ludden v. State, 31 Neb., 429; Sargent v. Warren, 22 N. Y. Weekly Dig., 473; State v. Conn., 37 Ore., 596, 62 Pac. Rep., 289; Freeman v. Huron, 8 S. Dak., 435, 66 N. W., 928; In re Judson, 14 Fed. Cas. No. 7563, 3 Blatchf., 148; Parkhurst v. Kinsman, 18 Fed. Cas. No. 10759, 2 Blatchf., 76. The Supreme Court of the United States said in the celebrated Gompers case, that "he is not only entitled to be informed of the nature of the charge against him, but to know that it is a charge, and not a suit." U. S. v. Cruikshank, 92 U. S., 542, 23 L. Ed., 588, 593; Gompers v. Buck Stove & Range Co., 221 U. S. at p. 446, 55 L. Ed., at page 808. There was no affidavit made or presented in this case. The court, of his own volition, issued process for applicant to show cause why he should not be held in contempt of court on the statement in his order that "it having been made known to the court in the above case that the witness Emmett Landry had attempted to procure the evasion of the process of this court by the witness C. E. Chriss," etc. As a basis for contempt, the judge entered up the following order in the minutes of the court:

"The State of Texas      In the Criminal District Court
     v.     No. 17107     of Harris County Texas,
    Sam Webber.        March Term, 1911.

"It having been made known to the court in the trial of the above case, that the witness Emmett Landry had attempted to procure the evasion of the process of this court by the witness C. E. Chriss, in this, that after the process of this court had been duly served upon the State's witness C. E. Chriss in the above numbered and styled case that the said Landry attempted and tried to induce the said C. E. Chriss to leave the county and disobey the process of this court,

"WHEREFORE, the clerk of this court is hereby commanded to issue a notice to the said C. E. Landry commanding him to appear before this court on Saturday, the 8th day of April, 1911, at 9 o'clock a. m. and show cause, if any he can, why he should not be held in contempt of this court.

· "Witness my hand this the 7th day of April, A. D. 1911.
           C. W. Robinson,
               Judge of the Criminal District
                Court of Harris County, Texas."

Upon this order of the court the clerk of the Criminal District Court issued a notice which was given the sheriff commanding him to summon applicant to be and appear before the Criminal District Court of Harris County in obedience to the above order. There was no affidavit filed in the case and the whole proceedings for contempt was based upon the court's order. An affidavit was necessary as a predicate for the contempt proceedings. The quoted order is not a pleading of any character. It is but the entry of the judge's conclusion of what he

learned during the trial of the Webber case. That order constitutes the only basis of the contempt proceedings subsequently inaugurated against applicant. If it could be deemed legal to thus institute contempt proceedings, the order is wholly deficient on its face in stating the essentials of such pleadings as is required to form the predicate for the trial of constructive contempt. The order does not state that applicant had any knowledge of the fact, if it was a fact, that Chriss had ever been served with process, nor does it set out that such process was ever issued for Chriss in the Webber case, except in the most inferential manner. It does not state the nature or character of the process. Said order does not allege or state, even indirectly, that applicant had any knowledge of the issuance or service of process on Chriss. It does not show, nor does it attempt so to do, how the judge was informed, or how he acquired his knowledge that applicant had sought to induce Chriss to evade the process of the court further than the mere recitation that he learned this during the Webber trial. There is no affidavit, or sworn statement in the record, such as is necessary and required by law. If the court, of his own motion, without such affidavit or sworn statement, issue attachment, the order of the judge must, in that event, take the place of necessary pleadings alleging and charging "an accusation" against the accused. It must, therefore, necessarily be as explicit as the sworn pleading is required to be explicit. It must set out all the essential facts and elements of the alleged contempt. If process had not issued in the Webber case, this applicant could not be guilty of seeking to induce disobedience. If the process had issued and applicant was not aware of its issuance or service, still he could not be adjudged guilty of contempt. The order of the judge contains none of these essential elements which are necessary to charge an "accusation" against him. 19 Col., 343; 67 Cal., 405; 46 Ind., 298; 55 Ga., 272; 126 Cal., 244, and authorities heretofore cited. Whatever the pleadings, that is, the necessary pleadings necessary to accuse a citizen of criminal dereliction, such pleadings must state enough to show a prima facie case and this is held by all the authorities. It is, therefore, clear that the order of the court is not a sufficient predicate for the prosecution against applicant and it is even more patent that the order wholly fails to state the elements of such a pleading as could or would form the basis for the arrest and trial of a citizen where criminal punishment is to be the result. This much has been said to show that the order in question can not form the predicate or basis for the subsequent contempt proceedings; such process, being criminal, must be instituted by affidavit or sworn statement when the alleged contempt is not committed in the immediate view or presence of the court. In re Wood, 82 Mich., 75 at page 82, the rule is thus stated: "But those not committed in its immediate view and presence must be brought before the court by affidavit of the person who witnesses them, or have knowledge of them and the rule is made based upon such affidavit, either that an attachment issue or that the accused

show cause, at a certain time and place, why he should not be punished for the alleged contempt. "The Wood case cites many authorities in support of the above proposition. In further support of the proposition we cite the following cases: Ex parte Rickert, 126 Cal., 244; Batchelder v. Moore, 42 Cal., 412; Wyatt v. People, 17 Col., 252; Thomas v. People, 14 Col., 254; Chaplin v. People, 57 Ill., 577; Saunderson v. State, 151 Ind., 550; Whitten v. State, 36 Ind., 196; Snyder v. State, 151 Ind., 553; In re Nickell, 47 Kan., 734; In re McKenna, 47 Kan., 738; In re Harmer, 47 Kan., 262; State v. Vincent, 46 Kan., 618; State v. Henthorn, 46 Kan., 613; In re Blush, 5 Kan. App., 879; Androscoggin, etc., R. Co. v. Androscoggin R. Co., 49 Me., 392; Murdock's Case, 2 Bland, 461; In re Wood, 82 Mich., 75; Verplank v. Hall, 21 Mich., 469; State v. Ivis, 60 Minn., 478; Green Co. v. Rose, 38 Mo., 390; Herdman v. State, 54 Neb., 626; Le Hane v. State, 48 Neb., 105; Hawthorne v. State, 45 Neb., 871; Phillips v. Welch., 12 Nev., 158; Bradburg v. Bliss, 23 N. Y. App. Div., 606; 48 N. Y. Supp., 912; People v. Adams, 6 Hill, 236; State v. Root, 5 N. D., 487; Love v. State, 9 Ohio St., 337; State v. Kaiser, 20 Oregon, 50; Com. v. Snowden, 1 Brewst., 218; State v. Blackwell, 10 Rich., 35; Young v. Cannon, 2 Utah, 560; In re Coulter, 25 Wash., 526; State v. McClougherty, 33 W. Va., 250; State v. Frew, 24 W. Va., 416; Wilson v. Territory, 1 Wyo., 155; Hillmen v. Mutual L. Ins. Co., 79 Fed., 749.

The rule is further thus stated: "The statement or affidavit being jurisdictional, should show on its face sufficient facts constituting contempt. Hodges v. Yuba Co., Supr. Ct., 67 Cal., 405; Batchelder v. Moore, 42 Cal., 412; Wyatt v. People, 17 Col., 252; State v. Rockwood, 159 Ind., 94; Wooland v. State, 82 Ind., 49; Haskett v. State, 51 Ind., 176; McConnell v. State, 46 Ind., 298; Jordan v. Walpello Co., etc., 69 Iowa, 177; Montgomery v. Palmer, 100 Mich., 436; Herdman v. State, 54 Neb., 626; Cooley v. State, 46 Neb., 603; State v. Roborg, 5 N. J. L., 545; State v. Root, 5 N. D., 487; State v. Sweetland, 3 S. D., 503; Young v. Cannon, 2 Utah, 560; State v. Allen, 14 Wash., 684; State v. Canutt, 26 Wash., 68.

Before a person can be held guilty of contempt not committed in the presence of the court, he must have due and legal notice of the proceedings as it is presented against him. 9 Cyc., p. 39, and cases collated in note 98 on said page. Such proceedings as this must be based on an accusation. It takes this to constitute "due process of law." "He shall have the right to demand the nature and cause of the accusation against him and to have a copy thereof." Bill of rights, section 10. The order of the court is not "an accusation" in law. It is but the statement or conclusion of the judge from something he has learned. In order to constitute an accusation against a party, the pleading, whether by indictment, complaint or information, must state an offense or the elements which form the predicate for the punishment and this offense must be distinctly stated. It must contain the elements of the offense as it is necessary that the proof must correspond.

This is so elementary that authorities are not necessary. Without this, there is an utter want of the constitutional guaranty of "due process of the law of the land." Bill of Rights, section 19. Be the citizen ever so humble, wicked, or criminal, he still is entitled to the guaranteed "due process of law" before his life, liberty or property can be legally taken. This guaranty serves as his shield against illegal prosecution. We hold the order was not sufficient nor authorized. There was no affidavit or sworn statement accusing applicant of a criminal violation and until this has been made a prosecution is not justified. It is in violation of the organic law and is without "due process of the law of the land."

The conviction is void and applicant is, therefore, ordered discharged from custody.

*Relator discharged.*

HARPER, Judge, PRENDERGAST, Judge.—While not agreeing to all the conclusions stated, nor all the reasoning employed, yet we concur in the disposition of the case. In all cases of contempt, civil or criminal contempt, if the acts or conduct occur in the presence or hearing of the court or tribunal, no statement in writing is required, but the court may summarily deal with the contemnor. This is the rule under the decision of all the courts. If the conduct or acts occur outside of the presence of the tribunal, then the facts must be reduced to writing and be presented to the court, some cases holding that it should be sworn to, others that this is not necessary. We think the better practice, when the contempt, civil or criminal, does not occur in the presence and hearing of the court, that written allegations setting forth the contempt should be sworn to, unless presented by the district attorney in writing in his official capacity. As before stated, we agree to the disposition of this case, as the acts and conduct constituting the contempt did not occur in the presence of the court, and no written statement filed or presented to the court.